IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CYNTHIA SCHWARTZ, individually and )
behalf of the class defined herein, )
                                    )
            Plaintiff,              )        Case No.: 08CV2820
                                    )
v.                                  )        Judge Dow, Jr.
                                    )
ATLANTIC CREDIT & FINANCE, INC.,    )        Magistrate Judge Keys
                                    )
            Defendant.              )

## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Atlantic Credit & Finance, Inc. ("Atlantic") by and through its attorneys David

M. Schultz and Corinne C. Heggie and for its Reply in Support of its Motion to Dismiss

Plaintiff's Complaint pursuant to Federal Rule 12(b)(6) states as follows:

## INTRODUCTION

Atlantic, the owner of plaintiff's debt, filed a lawsuit against her to collect it.  Plaintiff

claims that Atlantic does not have title to her debt because Atlantic did not attach an "assignment

for collection" to the lawsuit.  Plaintiff claims this practice violates the Illinois Collection

Agency Act ("ICAA"), Fair Debt Collection Practices Act ("FDCPA") and Illinois Consumer

Fraud Act ("ICFA").  However, the ICAA does not require the owner of a debt, suing in its

name, to attach an "assignment for collection" before filing a collection complaint.

## I.   SECTION 8B APPLIES TO "ASSIGNMENTS FOR COLLECTION."

Section 8b unambiguously states that it applies to "assignments for collection"- cases in

which legal title and not beneficial ownership is assigned.  Rather than address this

straightforward proposition, plaintiff spends the first five pages of his brief discussing everything

but the language contained in Section 8b.  For instance, plaintiff discusses a press release issued

by Attorney General Madigan, an article from Collections & Credit Risk, a case out of the

Eastern District of Tennessee, the FTC's action against CAMCO and amendments and legislative history to other sections of the ICAA. (pp.1-5, Appendices A-I of Pl's Resp.). Plaintiff does not even reference Section 8b- the basis for her lawsuit- until the bottom of page 5. Plaintiff then argues that because the definition of "collection agency" in Section 3 of the ICAA was amended on January 1, 2008 to include debt buyers, this amendment somehow changes the meaning and scope of Section 8b. Plaintiff is incorrect. The fact that a change was made to the definition of "collection agency" does not mean that every provision of the ICAA now applies to debt buyers.

Illinois law recognizes that with any question of statutory construction, the best place to start is with the language of the statute itself. *Chemetall GmbH v. ZR Energy, Inc.*, 2001 WL 1104604 , *14 (N.D.Ill. 2001). When the language of a statute or rule is unambiguous, the only legitimate function of courts is to enforce the law as written. *People v. Roberts*, 214 Ill.2d 106, 120-21, 824 N.E.2d 250 (Ill. 2005). Yet plaintiff does not start with the language of Section 8b. Instead she talks about legislative history, effectively admitting that the plain language of the statute does not support her position.

In fact, plaintiff goes so far as to accuse the Illinois legislature as using "inapt prepositions" because they used the language "assignee for the creditor" in Section 8b. She claims, "[w]hen faced with inapt grammar or punctuation, the Court should ascertain the meaning consistent with the legislative intent and apply it." (Pl.'s Resp., p.7). Yet this alleged "inapt" grammar has been in Section 8b since it was last amended on January 1, 1996. For plaintiff's argument to work, this court must disregard language that has been in the statute for more than twelve years. Plaintiff improperly tries to twist the statute to meet her needs.

2

Plaintiff claims that to discern the meaning of Section 8b this court should look at legislative history for an amendment to a different part of the statute. Even if this court looked to the legislative history and Attorney General press release from the January 1, 2008 amendment to Section 3 to interpret the language of Section 8b, these documents do not support plaintiff's interpretation. Moreover, a press release is a dubious source for discerning legislative intent.

Plaintiff emphasizes that the Attorney General was a proponent of the amendment to the definition of "collection agency" to include debt buyers because "the Attorney General found that debt buyers' filing of lawsuits alleging ownership of debts was no guarantee that they owned the debts, that the debts were still outstanding, or that they were suing the right person." (Pl.'s Resp., pp. 5-6). On the contrary, the press release cited makes clear that the reason for the amendment was to "update Illinois law so it more closely resembles the Federal Fair Debt and Collections Practices Act." (Appendix A to Pl's Resp.). The amendment gave the Attorney General's office authority over debt buyers, where none had previously existed. The amendment had nothing to do with the alleged documentation required to be attached to collection complaints when filed by assignees for the creditor but had everything to do with efforts to harmonize Illinois law with the FDCPA.

Moreover, the House Debates demonstrate that the legislature did not have a clear understanding of the debt buying industry and in fact misstated the ICAA:

Franks:        "Representative, who would this apply to? Would it just apply to collection agencies or anyone who is a debt collector?"

Colvin: "Anyone who is a debt collector. So, yes, it would apply to those agencies that collect, but it also extends the provisions of this Act to those who so-called buy debt. Those individuals who call people's homes and offer to buy debt at a.. at a.. who buy debt at a reduced rate and then begin to try to collect the debt through…as a pass-through company from the original debtor."

3

Franks: "Under the Fair Debt Collection Practices Act, attorneys…which is a Federal Act…attorneys have been deemed to be construed as collectors. In this Bill, would attorneys also be deemed to be considered collectors?"

Colvin:        "If they're in the act of collecting a debt, indeed, they would be."

(Appendix H to Pl's Resp., at p. 2-3)

On the contrary, debt buyers do not buy debt from the consumer. In addition, the ICAA explicitly exempts attorneys as follows:

425/2.03(5).  Application of Act

This Act does not apply to persons whose collection activities are confined to an are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following:

***

5. Licensed attorneys at law.

***

Moreover, neither the debates nor the Attorney General's press release say one word about Section 8b or assignments for collection.

Plaintiff's tortured reading of the statute becomes obvious in applying plaintiff's reasoning to Section 8a-1. Plaintiff claims that under Section 8a-1, a debt buyer who has obtained the beneficial ownership of a debt still has an obligation to notify the original creditor- an entity who no longer holds any interest in the debt- of its intent to file a lawsuit. Plaintiff reasons that this would somehow protect the consumer because the creditor could notify authorities if it received two notices that two different entities were going to file suit. (Pl.'s Resp., p. 6). It is absurd to suggest that a creditor who has sold all rights in a debt has any obligation to track what happens to the debt thereafter or that a debt buyer who has acquired all

6354582v1 889146 7791

rights in a debt has any obligation to advise the original creditor of its intent to pursue litigation after the sale.

The language and meaning of Section 8b did not change as a result of the January 1, 2008 amendment. It still only applies to the circumstance in which legal title is passed to the collection agency to enable the collection agency to file suit for collection <u>as assignee for the creditor.</u> Since plaintiff has not alleged that Atlantic was assigned legal title of her debt for purposes of collecting it as assignee for his creditor, Section 8b does not apply to its conduct. The fact that Atlantic did not attach an assignment to the collection complaint pursuant to Section 8b of the ICAA does not give rise to liability.

II.    **PLAINTIFF IGNORES THE FACT THAT THE ICAA DOES NOT REQUIRE AN ASSIGNMENT TO BE ATTACHED TO A COLLECTION COMPLAINT.**

The ICAA contains no requirements about the form a state court collection complaint should take. Plaintiff does not address this. Rather, he chooses to discuss §5/2-606 of Illinois Code of Civil Procedure and state court decisions that have nothing to do with her §8b theory.

Plaintiff's Complaint does not reference or allege facts to support a §5/2-606 violation. The *Candice v. Ricketts* decision, which discussed §5/2-606 in dicta and found a violation of Illinois' Mechanic Lien Act, as defendant's opening brief explains, has no application to the allegations in his Complaint that an assignment has to be attached to a state collection complaint. (Pl's Resp., p. 11).

Likewise, the *Ramirez* decision is not on point. Plaintiff suggests *Ramirez* is relevant to her §8b theory because "...the contract must be attached or quoted (in the collection complaint)....any documents transferring the contract rights to that party are documents on which the action is founded. That is the import of *Candice* and was followed in *Ramirez*." (Pl's Resp., p. 11). This makes no sense. First, *Ramirez* did not involve the ICAA. Second, it did not

5

involve an assignment or an assignment for collection.  Third, the *Ramirez* court held that the five year limitations period for unwritten contracts applied to a collection complaint because a written contract signed by both the original creditor and the debtor was not attached to the pleading. *Ramirez v. Palisades Collection, LLC*, 2008 WL 2512679, *5 (N.D.Ill. 2008).[1]

Similarly, plaintiff's argument that defense counsel argued in a brief in another federal jurisdiction that "collecting debts to which one does not have legal title as fraudulent and malicious" is irrelevant here.  (Pl's Resp., p. 11 & Appendix K ).  Her Complaint does not allege that Atlantic was assigned legal title of her debt.  It challenges the fact that an assignment was not attached to her state court collection complaint to support her §8b theory.

Equally as irrelevant is plaintiff's reliance on the *Barnes* and *O.K. Electric* decisions for the proposition that there is a presumption in Illinois that when no assignment is attached to a state court complaint, it is "presumed" that "no document exists." (Pl's Resp., p. 11).  First, the word "presumption" does not appear anywhere in either cited decision.  Second, these cases do not involve the ICAA or  assignments and do not hold that in Illinois an assignment is presumed not to exist when it is not attached to a pleading.

In *Barnes v. Peoples Gas Light and Coke Company*, 103 Ill. App.2d 425 (1st Dist. 1969), plaintiff filed suit against the gas company for wrongfully discontinuing his gas service. Defendant moved to strike the complaint claiming that plaintiff failed to plead facts that it owed plaintiff a duty.[2]  The court found that plaintiff failed to plead facts sufficient to indicate offer, acceptance and consideration and stated that the complaint did not purport to be based on a

---

[1] Ramirez's counsel is Schwartz's counsel.

[2] Illinois is a fact-pleading state. *Beahringer v Page*, 204 Ill.2d 363, 369, 789 N.E.2d 1216, 1221 (2003).

6354582v1 889146 7791

written instrument. Basically, plaintiff failed to allege that the parties had a written agreement and the agreement's terms. *Barnes* has nothing to do with any presumption about assignments that are not attached to pleadings or the ICAA and thus has no application to this case.

In *O.K. Electric Co v. Fernandes*, 111 Ill.App.3d 466, 444 N.E.2d 264, 266-67 (2nd Dist. 1982), plaintiff filed a two count complaint against Fernandes for breach of contract for electrical services. Count I alleged that electrical services were performed at various specific locations for which Fernandes agreed to pay specific amounts. Count II made the same allegations, attaching an itemized bill stating that there was an account stated. Defendant claimed that the complaint was insufficient because it failed to allege whether the contract was oral or written and the court found that failure to plead whether a contract was oral or written was not a ground for dismissal and allowed the complaint to stand. Again, this case has nothing to do with assignments or the ICAA.

Plaintiff's alleged §8b violation is based on the following facts: "the assignment must be attached to the complaint" and "the complaint did not attach any sort of assignment." *See,* Complt., ¶¶10, 27; Pl's Resp., p. 11 ("Defendant points to the allegations about no assignments being attached.")[3](emphasis added). Her class is defined as "all individuals …against whom Atlantic Credit & Finance, Inc. filed a collection lawsuit…without attaching to the complaint an assignment that complied with §8b of the ICAA." Complt., ¶35. However, she completely ignores the fact that the ICAA has no requirements about the form a state court pleading to collect a debt should take.

_____

[3] This is alleged in paragraph 27 of her Complaint: "The [collection] complaint did not attach any sort of assignment."

6354582v1 889146 7791

Section 8b applies to "an assignment for collection" and then lists what information a valid assignment must contain. *See, e.g.* §8b(a)(i), (ii)(assignment must be evidenced by a written agreement with an effective date and consideration paid), §8b(b)(how consideration must be paid), §8b(c)(stating assignment must be voluntary). There is no provision under §8b that states an assignment must be attached to anything, much less a state court pleading to collect a debt as plaintiff alleges in her Compliant. No where in the text of the ICAA does it require an assignment to be attached to a state court pleading. Absent statutory support for plaintiff's assignment attachment theory (and her class definition), Count II fails and should be dismissed with prejudice.

**III.    PLAINTIFF'S COMPLAINT IMPROPERLY CHALLENGES THE FORM OF A STATE COURT PLEADING.**

Plaintiff's claim that Atlantic violated the ICAA is based on her theory that in order to have a valid claim, an assignment that complies with Section 8b must be attached to a collection complaint. Strangely in Section III of her response brief, plaintiff argues that she is not alleging that the *failure to attach the assignment* is actually an ICAA violation but rather the *failure to own the debt* itself is the violation. This Court should not be misled. Plaintiff's complaint and class definition speaks for itself. (Compl., ¶¶10, 27, 35). Plaintiff's response argument and plaintiff's class definition are not consistent. If plaintiff now wants to change her claim, she needs to change her class definition. Plaintiff cannot have it both ways.

Plaintiff's complaint is premised on the *failure to attach an assignment*. Collection attorneys engaged in "the actual practice of law" are not subject to the ICAA for the manner in which they construct their complaints nor for the documents they do or do not attach to them.

6354582v1  889146  7791

*Shalabi v. The Huntington National Bank*, 2001 WL 777055, *2-3 (N.D. Ill.)   The legal profession and the rules of pleading are already well regulated and plaintiff should not be allowed to use the ICAA, nor the FDCPA, (See Section V) to reach defendant for alleged pleadings violations

This Court should rule based upon the allegations actually stated in plaintiff's Complaint and in regard to the *failure to attach an assignment* claim repeatedly alleged in the complaint. This Court should rule as it did in *Shalabi v. The Huntington National Bank*, 2001 WL 777055, *2-3 (N.D. Ill.) (analyzing the ICFA) and hold that collection attorneys engaged in "the actual practice of law" are not subject to the ICAA for the manner in which they construct their complaints nor for the documents they do or do not attach to them.   The legal profession and the rules of pleading are already well regulated and plaintiff should not be allowed to use the ICAA to reach defendant for alleged pleadings violations of its counsel.

Defendant's motion also notes that litigants are already granted a privilege which provides for absolute immunity against any claims regarding the manner in which pleadings are drafted.[4]   Plaintiff does not challenge this argument in her response brief.   Under Illinois law, the only causes of action recognized for the improper drafting and filing of pleadings are malicious prosecution and abuse of process.  *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983); *Junction Solutions, LLC v. MBS Dev., Inc.*, 2007 WL 4234091, *5 (N.D. Ill.); *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 47 (1st Dist. 1992); *Lyddon v. Shaw*, 56 Ill. App. 3d 815, 822 (2d Dist. 1978).   Neither are alleged here and as a result plaintiff has failed to state a cause of action.

---

[4] *MacGregor v Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007); *Ritchey v Maksin*, 71 Ill.2d 470, 476 (1978); *McNall v Fns*, 336 Ill. App. 3d 904, 906 (3d Dist. 2002); *Jurgensen v Haslinger*, 295 Ill. App. 3d 139, 141-42 (3d Dist. 1998).

9

**IV.    THE REASONING OF THE *SHERMAN* AND *KIM* COURTS IN IMPLYING A PRIVATE RIGHT OF ACTION UNDER THE ICAA NO LONGER APPLY IN LIGHT OF THE JANUARY 1, 2008 AMENDMENT.**

Plaintiff's response brief at Section IV correctly notes that several cases prior to January 1, 2008 held that a limited private right of action may be inferred into the ICAA in certain factual circumstances. When this Court analyzes the reasons that those cases held as they did, it will find that none of those reasons exist here in this case and now in the present after the January 1, 2008 amendments expanded the ICAA, as plaintiff admits "to afford Illinois consumers greater protections from abusive debt collection practices."

The reason the courts in *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979) and *Kim v. Riscuity, Inc.*, 2006 WL 2192121 (N.D. Ill.) held that a private right of action could be inferred into the ICAA is because in those cases the conduct alleged involved harassing collection letters being sent and harassing telephone calls being made. Those cases did not involve state court litigants interacting before the court and through licensed counsel. Plaintiff in this case is not in the same class of individuals as the plaintiffs in *Sherman* and *Kim* and the ICAA is not designed to protect a plaintiff such as the plaintiff in this case, nor is it designed to protect against injuries such as those purportedly alleged in this case.

Most importantly, the courts in *Sherman* and *Kim* seized upon the lack of provisions within the old version of the ICAA that resulted in a failure by the ICAA to provide for adequate consumer protections from abusive debt collectors. As admitted in point F, page 10, Section IV of plaintiff's response brief, in "2007, Attorney General Madigan drafted amendments" to provide for "greater protections from abusive debt collection." When this Court now looks back at the reasons cited by the courts in *Sherman* and *Kim*, it will find that the ICAA is now radically different in regard to the remedies that a consumer may seek. A private right of action should no

10

6354582v1 889146 7791

longer be inferred based upon the same reasoning the courts in *Sherman* and *Kim* held that a private right of action *could* be inferred in certain circumstances pre-January 1, 2008.

There are no provisions in the ICAA explicitly providing for a private right of action. That private right has only been inferred to exist by pre-amendment courts and for reasons that no longer exist involving circumstances that do not exist in this case. This Court should refuse to infer a private right of action exists in the ICAA post-January 1, 2008 and applicable to this case. As a result, this Court should rule that no ICAA cause of action has been stated by plaintiff.

### V.    STATE LAW, NOT THE FDCPA, GOVERNS THE CONTENT AND ADEQUACY OF STATE COURT PLEADINGS.

Plaintiff wants to use the FDCPA to (1) regulate the content of collection complaints filed in state court and (2) provide a federal remedy for disputes over the sufficiency of collection complaints filed in state court. (Pl's Resp., p. 12-14). The court should not allow this action because the FDCPA does not address the process of state court litigation and does not specify what must be attached to a state court complaint.

Plaintiff tries to avoid the *Beler, Wade* and *Olvera* decisions. She argues that "none of these three supports defendant's argument that filing suit on debts without legal title to them is not an FDCPA violation." (*Id.*, p. 12, 14). That is not the case.

The theory pled in the Complaint is that defendant violated §8b of the ICAA because the "assignment must be attached to the complaint" and "the complaint did not attach any sort of assignment" to support her theory that defendant engages in practice of filing suits without attaching a complete assignment. (Complt., ¶¶10, 27). This amounts to an FDCPA claim, according to plaintiff, because Atlantic allegedly filed a suit knowing it had no defenses because it had no assignment. *Id.*, ¶¶43-45. Her theory is based on violations of Illinois state pleading requirements, not the FDCPA.

11

Regardless, the FDCPA does not regulate the contents of Illinois pleadings and *Beler* says so. *Beler v. Blatt, et al.*, 480 F.3d 470 (7th Cir. 2007). There the court held that the FDCPA is not an enforcement mechanism for other rules of state and federal law and went so far as to suggest that proceedings in state court are outside the scope of the FDCPA, declining to use the statute as a vehicle to impose new rules on the collection of judgments entered by state courts. *Beler*, 480 F.3d at 472-3. The debtor's §1692f claim wherein she argued that this provision of the FDCPA should be read as prohibiting any collection practice that allegedly runs afoul of other laws, such as state and federal rules, was rejected. The court stated:

> §1692f creates its own rules...; <u>it does not so much as hint at being an enforcement mechanism for other rules of state and federal law</u>. This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship. *Beler*, at 473-4 (emphasis added).

Thus, the FDCPA should not be seen as a statute that can be used to enforce other laws, like whether a state court complaint violates the ICAA because an assignment was not attached to it. *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996)("....[W]e must determine not whether RCA violated the state statute, but whether it violated the (FDCPA). We disagree with Wade that debt collection practices in violation of state law are per se violations of the FDCPA."); *Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005)(claims against debt buyer for charging interest higher than permitted under Illinois statute rejected because, in part, "it makes the federal statute a vehicle for enforcing state law, and why would Congress want to do that?").

To avoid the reality that her Complaint challenges state, not federal law, plaintiff cites several cases omitting facts the court considered in making their rulings. For instance, the issue in *Randolph* is different than here. (Pl's Resp., p. 12). There, the court decided whether a plaintiff could bring a claim under the FDCPA for an alleged violation of the bankruptcy stay.

12

The court made no findings about the language in the letters before it, much less a collection complaint. Thus, *Randolph*'s dicta about "false" statements does not support plaintiff's position that decisions applying *Beler* permit "claims... that a pleading would not be understood by an uneducated person." (Pl's Resp., p. 12).

*Gearing* is also inapplicable because it involved a FDCPA claim based on two bad checks plaintiff wrote to Ayerco. *Gearing*, 233 F.3d at 471. The collector hired to collect the debt, sent plaintiff a collection letter which stated it was subrogated to Ayerco's rights, when in fact it was not. *Id*. The lawsuit alleged that this assertion (that it was Ayerco's subrogee) was a false representation under §1692e. *Gearing* does not involve a collection complaint or §1692e claims based on allegedly not complying with state law, much less the ICAA, like this case. For the same reasons *Evory* does not apply either. That case involved an FDCPA claim based on a limited time collection letter, not a state court pleading or state law (ICAA) like this case does. (Pl's Resp., p. 13).

Plaintiff also suggests that the FDCPA would be "meaningless" if it "did not apply to litigation conduct." (Pl's Resp., p. 13). To support this contention, plaintiff lists FDCPA provisions she believes are "at risk" and cites no supporting case law. *Id*., p. 13. So plaintiff's own say so is the only support she can put forth to shore up this proposition.

Plaintiff cannot use the FDCPA, which polices collection practices that are themselves false or unfair, to impose federal liability against a debt collector who goes to state court to recover a credit card debt without attaching the assignment to the pleading. Thus, his FDCPA claims should be dismissed with prejudice.

6354582v1 889146 7791

## VI.    PLAINTIFF'S ILLINOIS CONSUMER FRAUD CLAIM SHOULD BE DISMISSED.

As argued in defendant's motion, plaintiff's ICFA claim should also be dismissed. ICFA liability must be premised on direct participation in the allegedly deceptive act. Derivative or vicarious liability is not permitted. *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 720, 733 (N.D. Ill. 2005); *Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39 (2001); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359 (1988). Plaintiff here alleges no direct conduct by defendant. Plaintiff does not allege that defendant mailed anything, called anyone, filed anything or drafted any document that allegedly violates any law. All of plaintiff's allegations concern a lawsuit and a pleading drafted and filed by defendant's licensed attorneys and brought in Illinois state court by defendant's licensed attorneys. Under these circumstances, there is no ICFA liability.

ICFA claims must also allege, with particularity and specificity, (1) a deceptive act or practice, (2) intent (3) in the course of trade or commerce, and (4) actual damages (5) proximately caused by the deceptive act. *Villasenor v. American Signature, Inc.*, 2008 WL 904888, *3 *citing Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002).

(1)    Here, plaintiff has alleged no deceptive act or practice. The "act" in this case is that defendant's attorneys filed a collection lawsuit. There is nothing deceptive about that and plaintiff has failed to plead with particularity and specificity that there is.

(2)    For the same reasons, plaintiff has failed to plead intent with particularity and specificity. Defendant here retained attorneys to file a lawsuit to collect debt owed to it. Plaintiff does not explain how that demonstrates intent to deceive.

(3)    Court litigation and the practice of law are not considered "trade or commerce" and the ICFA does not apply to the acts of attorneys. *Shalabi v. The Huntington National Bank*, 2001 WL 777055 (N.D. Ill.); *Cripe v. Leiter*, 184 Ill.2d 185 (1998). Plaintiff has therefore failed

6354582v1 889146 7791

to allege, with particularity and specificity, a deceptive act occurring in a course of conduct involving trade or commerce.

(4)    Plaintiff has not alleged actual damages with particularity and specificity.

### VII.    PLAINTIFF ALLEGES NO ACTUAL DAMAGES.

The Complaint does not have one allegation that goes to actual damages to support her ICFA or ICAA claims. Complt., Counts II-III.  On this basis alone, the Complaint should be dismissed.

Additionally, plaintiff argues that she may have sustained actual damages by being required to retain counsel: "The filing of a collection suit without title to the debt is necessarily injurious.  Ms. Schwartz was required to retain counsel to defend it." Pl's Resp., p. 15.  This is merely a self serving statement and not evidence of damage.  However, plaintiff does not actually plead this anywhere in her Complaint, does not explain why plaintiff had to retain counsel, does not explain who that counsel was nor state what that counsel charged.  Defendant is left to speculate whether plaintiff is really claiming such a damage or not.  If plaintiff is, the law requires him to have alleged it, with particularity and specificity, in her Complaint, and not for the first time in a response brief.

Finally, plaintiff must allege actual damages that were caused by the violation at issue. The alleged wrongdoing here is an event (filing a complaint without an assignment) in state court litigation.  She has not alleged at all how this event actually damaged her, if at all.  Nor has she explained how her alleged actual damages are the same as those of the alleged putative class members.

Plaintiff's failure to allege actual damages is fatal to both her ICFA and ICAA claims. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 751-2 (court not convinced that the ICAA

should be interpreted as providing an implied private cause of action but even if it were the ICAA still requires actual damages). For these reasons, both plaintiff's ICFA and ICAA claims should be dismissed.

WHEREFORE, Defendant Atlantic Credit & Finance, Inc. respectfully requests this court grant its Motion to Dismiss and dismiss plaintiff's Complaint with prejudice.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/*Corinne C. Heggie*
_____

David M. Schultz
Corinne C. Heggie
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

16

6354582v1 889146 7791

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SCHWARTZ, individually and behalf of the class defined herein, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 08CV2820 |
| v. | ) ) | Judge Dow, Jr. |
| ATLANTIC CREDIT & FINANCE, INC., | ) ) | Magistrate Judge Keys |
| Defendant. | ) ) | |

### NOTICE OF FILING

TO:   Mr. Thomas Soule
      Edelman, Combs, Latturner & Goodwin, LLC
      120 South LaSalle Street, 18th Floor
      Chicago, Illinois 60603

PLEASE TAKE NOTICE that on **September 5, 2008,** we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **REPLY IN SUPPORT OF MOTION TO DISMISS**, in connection with the above entitled cause, a copy of which is attached hereto.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

David M. Schultz
Corinne C. Heggie
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
312/704-3001 – facsimile

s/ *Corinne C. Heggie*
Corinne C. Heggie

6358927v1 7791

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **September 5, 2008,** I electronically filed the above and foregoing **NOTICE OF FILING AND REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service of to be served upon all parties of record.

HINSHAW & CULBERTSON LLP

David M. Schultz
Corinne C. Heggie
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
312/704-3001 – facsimile

s/ *Corinne C. Heggie*
Corinne C. Heggie

2